**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

LOUIS VUITTON MALLETIER,
    Plaintiff,

    v.　　　　　　　　　　　　　　　　　　CIVIL NO. 03-2277 (JAG)

ENRIQUE FORTY d/b/a LINCOLN
FANTASY; PELUET OF PUERTO RICO
CORP, et als.,
    Defendants.

## REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment and Memorandum of Law (Docket No. 209) filed by Louis Vuitton Malletier ("Plaintiff") against the Defendants, who answered the Complaint and/or the Amended Complaint, listed on the table below:

| No. | Name of Defendant |
|---|---|
| 1. | Peluet of Puerto Rico Corp. |
| 2. | Gerónimo Robaina Álvarez d/b/a Designer's Gallery |
| 3. | Edgar Torres Cintrón d/b/a Andrea's Leather Shop |
| 4. | María Franco a/k/a Judy Franco a/k/a Judith Franco |

Only Defendant Gerónimo Robaina Álvarez d/b/a Designer's Gallery filed a Response to the Summary Judgment and Cross Motion for Summary Judgment. (Docket No. 223). Upon review of the same, Defendant Robaina does not present any issue of fact nor challenges any of the uncontested material facts in plaintiff's motion. The court finds that there is no genuine issue of material fact for trial. The court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED** as to the

**Case No. 03-2277 (JAG)**                                    2

aforementioned defendants, and that a hearing be scheduled by the District Court to determine the amount and extension of statutory damages to be awarded to the Plaintiff.

**I.      Standard of Review**

FRCP 56 provides that a "…party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."

Under FRCP 56(c) summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. Pagano v. Frank, 983 F.2d 343, 347 (1st Cir.1993). A fact is material if it might affect the outcome of the case. Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989). An issue is "genuine" if sufficient evidence exists to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 24 (1st Cir. 1989). The party filing a motion for summary judgment bears the initial burden of proof to show "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party to show affirmatively, through the filing of supporting affidavits or otherwise, that a genuine issue exists for trial. Fraguada Rodriguez v. Plaza Las Americas, 349 F.Supp.2d 229, 230-231 (D.P.R. 2004).

Summary judgment is as appropriate in a trademark infringement case as in any other case and should be granted or denied on the same principles. WSM. Inc, v. Tennessee Sales Co., 709 F.2d. 1084, 1086 (6th Cir. 1993). Moreover, the mere existence of a disputed fact is not sufficient to defeat a motion for summary judgment. There must be a genuine issue for trial. It is well established that the showing of a genuine issue for trial is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming its version to be true) to a judgment as a matter of law. The question to be resolved is whether there is sufficient evidence supporting the claimed factual dispute

**Case No. 03-2277 (JAG)**                3

to require a jury or judge to resolve the parties differing versions of the truth at trial. <u>U. S. Jaycees v. San Francisco Jr. Chamber of Commerce</u>, 354 F.Supp. 61, 69 (D.C.Cal., 1972).

**II.     Uncontested Facts**

1. Plaintiff is a corporation organized and existing under the laws of France.

2. Plaintiff is in the business of manufacturing, and selling in Puerto Rico, the United States and many parts of the world, luxury leather goods, bags, wallets, apparel, shoes, watches and related accessories under its renowned LOUIS VUITTON® mark. Its founding and leading brands are LOUIS VUITTON®, LV®, and the LOUIS VUITTON® or LV® DESIGNS (the LOUIS VUITTON® marks).

3. The LOUIS VUITTON® marks have become well known and famous among the trade, and the public at large, in the United States, Puerto Rico and many parts of the world.

4. The LOUIS VUITTON® marks are distinctive. Sales under the LOUIS VUITTON® marks are in multimillion dollars. As a result thereof, the trade and the public in general widely recognize the LOUIS VUITTON® marks as the designation that identifies Plaintiff and its products.

5. Since as early as 1931, Plaintiff has owned a significant number of trademark registrations in the Principal Register of the U.S. Patent and Trademark Office for LOUIS VUITTON® for use in connection with a wide range of goods.

6. All registrations Plaintiff owns are valid and subsisting and are prima facie evidence of the validity of the LOUIS VUITTON® marks, and of Plaintiff's ownership and exclusive right to use its marks in commerce in accordance with 15 U.S.C. §1057(b). Moreover, a large number of these registrations have become incontestable in accordance with 15 U.S.C. §1065 and are conclusive evidence of the validity of the marks and of Plaintiff's ownership and exclusive right to use them pursuant to 15 U.S.C. § 1115(b).

7. In addition, Plaintiff also owns a substantial number of trademark registrations for the LOUIS VUITTON® marks issued by the Department of State of the Commonwealth of Puerto Rico, all of which are valid and subsisting and in full force and effect.

8. The LOUIS VUITTON® marks have become emblematic for high quality luxury leather products and have come to identify Plaintiff as the source from which such products originate.

**Case No. 03-2277 (JAG)**                                4

A catalogue ("Le Catalogue") showing most of the marks and designs owned by Plaintiff is in file attached to the Complaint as Exhibit 3.

9. Defendants are selling or have sold goods bearing counterfeit copies of LOUIS VUITTON® marks.

10. Plaintiff sells LOUIS VUITTON® branded goods only through authorized retail outlets.

11. None of the Defendants has been authorized by Plaintiff to sell LOUIS VUITTON® branded products.

### III.  Legal Analysis

Summary judgment is appropriate in the instant case because the uncontested facts plainly establish that Defendants have willfully engaged in counterfeiting Plaintiff's world renowned LOUIS VUITTON® marks. Each factual statement is supported by abundant proof of Plaintiff's Trademark Registrations in the U.S. and Puerto Rico, by the declarations under penalty of perjury of the individuals that investigated Defendants' counterfeiting activities and purchased counterfeit goods from the Defendants, and by the declaration under penalty of perjury of Plaintiff's Head of Anti-Counterfeiting Office for the Americas.

#### *A.   Nature of Defendants' Actions*

The undisputed facts establish that Defendants engaged in the willful distribution and sale of goods labeled with counterfeit LOUIS VUITTON® marks.

Section 45 of the Lanham Act (15 U.S.C. § 1127) defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."

"Counterfeiting is the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark… Often, counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise. Thus, counterfeiting is 'hard core' or 'first degree' trademark infringement and is the most blatant and egregious form of passing off… and is prevalent with respect to high-quality, 'status' goods." J. Thomas McCarthy, McCarthy On Trademarks and Unfair Competition, Vol. 4, §25:10, Page 25-17.

The Plaintiff only sells LOUIS VUITTON® goods thru authorized retail outlets. No single Defendant has been authorized by the Plaintiff to sell LOUIS VUITTON® branded goods. Hence, the sale by Defendants of goods bearing the world famous LOUIS VUITTON® marks is without leave or authority from the Plaintiff and constitutes counterfeiting.

### B.     *Permanent Injunction & Damages*

Under Section 34 of the Lanham Act the Plaintiff is entitled to a permanent injunction to stop repetition by Defendants of their egregious conduct and to prevent the violation of its trademark rights (15 U.S.C. §1116(a)).

However, a permanent injunction alone is insufficient per se to discourage Defendants from returning to their antics and for sure does not compensate the Plaintiff for the damages sustained as a result of Defendants' counterfeiting activities. The best disincentive against future recurrence is to compel Defendants to pay the Plaintiff the pecuniary damages they have caused. A permanent injunction against Defendants coupled with an order directing them to shell out Plaintiff's damages will force Defendants to put their hands in their pockets, make their activities unprofitable, and provide adequate deterrence for the future.

This is clearly in line with the purpose of trademark laws which "…is to prevent use of same or similar marks in a way that confuses the public about the actual source of goods or services." Star Financial Services, Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 9 (1st Cir. 1996). In this sense, the Court's "…primary task is to make violations of the Lanham Act unprofitable to the infringing party." Veryfine Products v. Colón Brothers, 799 F. Supp. 240, 259 (D.P.R.1992).

Under Section 35(a) of the Lanham Act the Plaintiff is entitled to recover "…defendant's profits, (2) any damages sustained by the plaintiff and 3) the costs of the action… In assessing damages the Court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount…", and "…in exceptional cases may award reasonable attorneys fees to the prevailing party." 15 U.S.C. § 1117(a).

### C.     *Treble Damages, Costs and Attorney's Fees*

This is clearly an exceptional case. Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a) when "…a violation of any right of the registrant of a mark registered in the Trademark Office

is established, Plaintiff shall be entitled to recover defendant's profits, any damages sustained by the Plaintiff, and the costs of the action. In addition, Section 35 gives courts the discretionary power to increase the damage award up to three times the actual damage caused. Treble damages are granted when the defendant's infringing actions are deemed to have been made 'knowingly and willfully'. Gorenstein Enter., Inc. v. Quality Care-USA, Inc., 874 F.2d 431 (7th Cir. 1989); Sun Products Group, Inc. v. B & E Sales Co., Inc., 700 F.Supp. 366 (E.D.Mich.1988); Polo Fashions, Inc. v. Rabanne, 661 F.Supp. 89 (S.D.Fla. 1986); Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd., 642 F.Supp. 1143 (S.D.N.Y. 1986). Section 35 also provides that a court may, in exceptional cases of trademark infringement, award reasonable attorneys' fees to the prevailing party. Generally, courts define an 'exceptional' case of infringement as one involving willful or deliberate conduct on defendant's part." VMG Enterprises, Inc. v. F. Quesada & Franco, Inc., 788 F.Supp. 648, 661-62 (D.P.R. 1992).

A case is exceptional if "…the acts of trademark infringement were malicious, fraudulent, deliberate, or willful. Tamko Roofing Products v. Ideal Roofing, 282 F.3d 23, 31 (1st Cir. 2002). Bad faith or fraud is not a necessary condition to an award of attorneys' fees under section 35 of the Lanham Act. '[W]illful conduct may be sufficient when the trial court takes into account all the facts and equities of the case.'" Anywhere, Inc. v. Romero, 344 F.Supp.2d 345, 346-347 (D.P.R. 2004)

Treble profits/damages and a reasonable attorney fee are mandatory against one found to have been intentionally using a mark knowing it to be a counterfeit. Louis Vuitton, S.A. v. After Dark Boutique, 680 F.Supp. 1507, 1512 (N.D.Fla. 1988) ("Award of treble damages and attorney and investigatory fees was warranted based on offer for sale and sale of counterfeit trade name merchandise, where Defendants acted knowingly and intentionally and where Defendants failed to appear at trial and failed to make any showing of extenuating circumstances. Lanham Trade-Mark Act, § 35(b)"). Treble damages are a particularly suitable remedy for counterfeiting because simple damages under-deter: "[The] violator will know that he won't be caught every time, and merely confiscating his profits in the cases in which he is caught will leave him with a net profit from infringement. Louis Vuitton S.A. v. Lee, 875 F.2d 584, 588 (7th Cir. 1989).

In this instant,"….[t]he trebling of plaintiff's damages or the defendant's profits –whichever is greater—is mandatory (as is the award of the plaintiff's attorney's fees), subject only to the

**Case No. 03-2277 (JAG)**                                7

statute's exception for 'extenuating circumstances…' which are extremely narrow and as we shall see are not present here." Id. at 588.

The factual elements that trigger the special civil monetary remedies against counterfeiting require proof that the defendant i) intentionally used or is using a counterfeit mark in commerce, ii) knowing the mark is counterfeit, iii) in connection with the distribution or sale of goods, iv) which is likely to deceive and cause confusion. J. Thomas McCarthy, supra, § 25:15, at page 25-30.

A retailer is reputed to have intentionally used a counterfeit mark in commerce if he has "…failed to inquire further because he was afraid of what the inquiry would yield. Willful blindness is knowledge enough." Louis Vuitton S.A. v. Lee, 875 F.2d at 590. Thus, a retailer that buys "…obviously poorly crafted goods from an itinerant peddler at bargain-basement prices is guilty of willful blindness. Channel, Inc. v. Italian Active Wear of Florida, Inc., 931 F. 2d 1472, 1476 (11th Cir. 1991). Hence, willful blindness is not a defense.

For sure, Defendants "….must have known something about the retail trade. Vuitton [is an] international status [symbol] known to everyone, whether or not proficient in the English language, who sells handbags and luggage and to most people that buy them." Louis Vuitton S.A. v. Lee, 875 F.2d at 589. Therefore, it is inconceivable that the Defendants would have never heard of the Plaintiff or of the LOUIS VUITTON® marks. Thus, innocent infringement is not a defense here.

In any event, federal registration gives third parties constructive notice of ownership by the registrants (15 U.S.C. §1072). Hence, there is no excuse for another person to adopt and start using a similar or identical mark in connection with like products or services. Consequently, notice under section 1072 prevents a junior user from claiming any defense based on good faith innocent use or lack of notice. Davidoff Extension v. Davidoff Comercio e Industria, 747 F. Supp. 122, 127 (D.C.P.R. 1990).

Unquestionably, this is an exceptional case. It has been shown that Defendants' illegal activities are willful and with knowledge of the fact that the goods they are selling are counterfeit. Willful blindness is knowledge enough. Louis Vuitton S.A. v. Lee, 875 F.2d at 590.

Moreover, the Plaintiff sells only through authorized retail outlets, and none of the Defendants has been or is authorized to sell LOUIS VUITTON® goods. Consequently, in addition

**Case No. 03-2277 (JAG)**                                8

to a permanent injunction, the Plaintiff is entitled to recover statutory damages, costs of proceedings and reasonable attorney's fees in accordance with Section 35 of the Lanham Act ( 17 U.S.C. 1117).

## IV. Conclusion

It is the **RECOMMENDATION** of this court to **GRANT** the entry of summary judgment against the individual Defendants listed in the table above and in favor of the Plaintiff with the following provisos:

(1) Ordering Defendants, their agents, servants, employees, attorneys, assigns, and all others in privity or acting in concert with them permanently enjoined from:

    (a) Using any reproduction, simulation, counterfeit, copy or colorable imitation confusingly similar to Plaintiff's marks.

    (b) Using in any manner any service mark, corporate name, trademark, trade name, trade dress, words, numbers, abbreviations, designs, colors, arrangements, or any combinations thereof, which would imitate, resemble or suggest Plaintiff's marks;

    (c) Otherwise infringing Plaintiff's well-known marks;

    (d) Unfairly competing with Plaintiff, diluting the distinctiveness of Plaintiff's well-known marks.

    (e) Advertising, promoting, marketing, publishing or sending any e-mail or other messages using any mark or name that is confusingly similar to Plaintiff's marks;

    (f) Using, registering or reserving any name, mark, label, symbol or logo that is confusingly similar to Plaintiff's marks.

(2) Under 15 U.S.C. § 1118 and the law of the Commonwealth of Puerto Rico, that Defendants deliver up for destruction all unauthorized products, including apparel, bags, watches, shoes, and all other materials in their possession or under their control that contain Plaintiff's marks, or any other name or mark that resembles the marks or any other reproduction, counterfeit, copy or

**Case No. 03-2277 (JAG)**                9

colorable imitation of Plaintiff's marks and all plates, molds, matrices, and other means of making or duplicating the same.

(3)   To the extent that Plaintiff has elected to recover statutory damages under 15 U.S.C. § 1117(c), instead of actual damages, the Magistrate Judge recommends that Plaintiff be allowed to recover statutory damages from each individual Defendant listed above to be determined at a future hearing to be set by the District Court.

(4)   Under 15 U.S.C. §1117 and the law of the Commonwealth of Puerto Rico, ordering Defendants to pay the costs of this action and Plaintiff's attorney fees.

The Court further recommends that this matter be referred to the U.S. Attorney for any potential violation under 18 U.S.C. §2320, particularly as to those defendants that have engaged in a more egregious conduct by trading in larger amounts of counterfeit goods.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

**SO RECOMMENDED**.

In San Juan, Puerto Rico this 22nd day of November of 2005.

*S/ Gustavo A. Gelpi*

GUSTAVO A. GELPI
United States Magistrate-Judge