IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LOUIS VUITTON MALLETIER

    Plaintiff

    v.                                                                  **CIVIL NO. 03-2277 (JAG)**

TITO MORALES d/b/a PARIS BAGS

    Defendant

## **REPORT AND RECOMMENDATION**

Plaintiff Louis Vuitton Malletier has requested that statutory damages be imposed upon defendant Tito Morales d/b/a Paris Bags ("Morales"). A default damages hearing was held on September 2, 2005, limited to defendants, including Morales, who had failed to answer the complaint or plead. [Docket No. 190]. Subsequently, the Court, through a Report and Recommendation, imposed upon Morales the amount of $50,000.00 based on the type of business activity engaged, the size and volume of counterfeit inventory seized from Morales' business by the U.S. Marshall, namely 742 Louis Vuitton branded items. Moreover, such amount was based on Morales' egregious conduct and high volume of seized counterfeit inventory. [Docket No. 191]

On September 22, 2005 Morales filed an objection to the Report & Recommendation. [Docket No. 194]. In response, plaintiff filed its Opposition. [Docket No. 197]. Subsequently a Status Conference was held on October 3, 2005. [Docket No. 199] Upon review of the Objection and plaintiff's response thereto, the Court recommended that the default against Morales remain, but that he be allowed an opportunity to contest the amount of statutory damages designated by the Court. [Docket No. 224]. Consequently, the Court adopted the Report and Recommendation and ordered a rehearing on the amount of damages. [Docket No. 229]. A default damages hearing was held on February 6, 2006 limited to Defendant Tito Morales d/b/a Paris Bags.

A defaulting party is deemed to have admitted all well-pleaded allegations of the complaint. In re The Home Restaurants, Inc. 285 F3rd 111,114 (1st Cir. 2002). The entry of a default establishes the defendant's liability and deprives a defendant, as Morales, of the right to contest the factual

**CIVIL NO. 03-2277 (JAG)**                                    2

allegations of the complaint. <u>Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertel v. Medfi Int'l, Inc.</u>, 982 F. 2d 686,693 (1st Cir. 1993). Therefore, Morales at the damages hearing was only entitled to contest the amount of statutory damages. At such proceeding, any other evidence related to liability or as to the contention of liability was irrelevant and moot.

At the hearing, the Court heard live testimony from plaintiff's lead investigator José Marrero and from Mrs. Grace Vázquez, one of Marrero's investigators. Plaintiff's Exhibits were marked and admitted, namely the business card of Paris Bags Collection, a copy of the seizure inventory list detailing the 742 Louis Vuitton branded articles seized by the U.S. Marshals and bearing the initials and signature of Morales, a sample of one of the items seized from Morales and an index card identifying the sample seized. Morales cross-examined both witnesses.

There is no evidence that would move the Court to infer that there exist mitigating circumstances that might benefit Morales' standpoint. Quite the opposite, the witnesses' testimony established that Morales incurred in serious egregious conduct.

After giving due consideration to the record as a whole and all evidence submitted at the hearing, the Court finds as follows:

## FINDINGS OF FACT

1. Plaintiff Louis Vuitton Malletier is a corporation organized and existing under the laws of France.

2. Plaintiff is in the business of manufacturing, and selling in the United States including Puerto Rico, and many parts of the world, luxury leather goods, bags, wallets, apparel, shoes and related accessories under its renowned **LOUIS VUITTON®** mark. Its founding and leading brands are **LOUIS VUITTON®**, **LV®**, and the **LOUIS VUITTON®** or **LV®** DESIGNS ( the LOUIS VUITTON® marks)

3. The **LOUIS VUITTON®** marks have become well known and famous among the trade, and the public at large, in the United States including Puerto Rico, and many parts of the world.

4. The **LOUIS VUITTON®** marks are distinctive. Sales under the **LOUIS VUITTON®** marks are in multimillion dollars. As a result thereof, the trade and the public in general widely recognize the **LOUIS VUITTON®** marks as the designation that identifies Plaintiff and its products.

5. Since as early as 1931, Plaintiff has owned a significant number of trademark registrations in the Principal Register of the U.S. Patent and Trademark Office for **LOUIS VUITTON®** for use in connection with a wide range of goods.

**CIVIL NO. 03-2277 (JAG)**              3

6. All registrations Plaintiff owns are valid and subsisting and are prima facie evidence of the validity of the **LOUIS VUITTON**® marks, and of Plaintiff's ownership and exclusive right to use its marks in commerce in accordance with 15 U.S.C. §1057(b). Moreover, a large number of these registrations have become incontestable in accordance with 15 U.S.C. §1065 and are conclusive evidence of the validity of the marks and of Plaintiff's ownership and exclusive right to use them pursuant to 15 U.S.C. § 1115(b).

7. In addition, Plaintiff also owns a substantial number of trademark registrations for the **LOUIS VUITTON®** marks issued by the Department of State of the Commonwealth of Puerto Rico, all of which are valid and subsisting and in full force and effect.

8. The **LOUIS VUITTON®** marks have become emblematic for high quality luxury leather products and have come to identify Plaintiff as the source from which such products originate. A catalogue ("Le Catalogue") showing most of the marks and designs owned by Plaintiff is in file attached to the Complaint as **Exhibit 3**.

9. The only authorized location in Puerto Rico to purchase authentic Louis Vuitton merchandise is Louis Vuitton's boutique located at the Condado section of San Juan, Puerto Rico.

10. Plaintiff requested José Marrero, a private investigator that specializes in trademark counterfeit matters, to investigate the sale of Louis Vuitton fake products in Puerto Rico. Among various venues, Mr. Marrero investigated the locale owned by Tito Morales d/b/a Paris Bags Collections, adjacent to Road 167, Bayamón, Puerto Rico.

11. Morales' business is located in a heavily trafficked area of Bayamón, Puerto Rico alluring the public and the consumers to visit Paris Bags Collections' premises.

12. Mr. Marrero assigned Mrs. Grace Vázquez perform the investigation. On November 22, 2003, Mrs. Vázquez went to Paris Bags Collection where she saw numerous Louis Vuitton branded merchandise. At least 95% of the merchandise observed by her at said premises consisted of Louis Vuitton branded goods.

13. Mrs. Vázquez was at Paris Bags Collection between 20-25 minutes, since there was a lot of Louis Vuitton branded merchandise to see and to ask about. She purchased a Louis Vuitton branded wallet for $85.50 and was given a business card presenting the name of Paris Bags Collection and an illustration of the Eiffel Tower.

14. Plaintiff's luxurious bags and apparel business originates in Paris, France.

15. Morales used such marketing tactics to confuse, deceive and induce the consumers and public to believe that they are dealing with Louis Vuitton Malletier, when in fact they are not. Such consumer confusion is against the public interest.

16. On December 6, 2003 U.S. Marshals seized from Morales 742 Louis Vuitton branded items. Morales approved and executed the U.S. Marshal's inventory listing of counterfeit goods seized by initializing and signing the seizure inventory list.

17. After hearing the evidence at the Preliminary Injunction Hearing, the Court found for the Plaintiff and entered a preliminary injunction against Morales.

**CIVIL NO. 03-2277 (JAG)**                4

18. Based on Mr. Marrero's personal knowledge and experience as an investigator of trademark counterfeit matters, he explained at length the basis why the goods Morales sold are all counterfeit. In short, he pointed out to the Court the overall poor quality never found in authentic Louis Vuitton products.

19. The Court notes that the poor quality of one of the items seized by U.S. Marshals, namely the sample handbag is clear and obvious.

20. The assorted Louis Vuitton branded goods seized from Morales consisted namely of women bags, women wallets, belts, ladies shirts, a lighter holster, an organizer, key rings, women shoes, men wallets, card holsters, lipstick cases and holders, coin wallets, cosmetic cases, cellular cases, large cosmetic cases, epi cases, mini wallets, a belt, small wallets, hair clips, a tote bag, a portfolio, women boots, large umbrellas, scarfs, polo shirts, hats, a key holder, card     holders, luggage, earrings, and watches.

21. Defendant Tito Morales d/b/a Paris Bags Collections has not been authorized by the Plaintiff to sell Louis Vuitton® branded goods.

22. Based on the foregoing, the Court finds that Defendant Morales sold goods bearing counterfeit copies of **LOUIS VUITTON®** marks hence causing irreparable damage to the plaintiff.

## CONCLUSIONS OF LAW

Fed. R. Civ. P. 55(b)(2) authorizes judgment by default where as here default against defendant has been entered. Unless set aside for good cause, the entry of default deprives defendant of the right to contest the factual allegations of the complaint. Moreover, following entry of default the Court may enter judgment by default by taking all well-pleaded factual allegations in the complaint as true, to determine whether it alleges a cause of action. Ramos-Falcon v Autoridad de Energía Eléctrica 301 F.3rd 1, 2 (1st Cir. 2002); Quirindongo Pacheco v. Rolón Morales, 953 F. 2d 16, 16 (1st Cir. 1992). The Court may also conduct a hearing to "establish the truth of any averment" in the complaint, Ramos-Falcón F. 3d, at 3. However in the First Circuit this "…is appropriate only if the Court has made 'its requirements known in advance to the plaintiff, so that [he] could understand the direction of the proceeding and marshal such evidence as may be available to [him]". Id.

In the instant case, the allegations in the complaint are well-pleaded and plainly establish plaintiff's causes of action. All factual statements are supported by the following: (1) proof of plaintiff's Trademark Registrations in the United States and Puerto Rico; (2) the live testimonies

**CIVIL NO. 03-2277 (JAG)**                                                      5

presented at trial of Mr. José F. Marrero, the private detective that investigated Defendant's counterfeiting activities, and of Mrs. Grace Vázquez, who working under Mr. Marrero's direct supervision, visited Morales' locale and purchased a counterfeit good; (3) the evidence entered and marked, namely the business card of Paris Bags Collection, a copy of the seizure inventory list detailing the 742 Louis Vuitton branded goods seized by the U.S. Marshals and bearing the initials and signature of Morales, a sample of one of the items seized from Morales, and an index card identifying the sample seized; and, (4) by the declaration under penalty of perjury of plaintiff's' Head of Anti-Counterfeiting Office for the Americas. The above facts plainly establish that Morales engaged in the willful distribution and sale of goods labeled with counterfeit **LOUIS VUITTON**® marks.

Section 45 of the Lanham Act, 15 U.S.C. § 1127, defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." "Counterfeiting is the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark… Often, counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise. Thus, counterfeiting is 'hard core' or 'first degree' trademark infringement and is the most blatant and egregious form of passing off… and is prevalent with respect to high-quality, 'status' goods." J. Thomas McCarthy, <u>McCarthy On Trademarks and Unfair Competition</u>, Vol. 4, §25:10, Page 25-17.

In Puerto Rico, plaintiff only sells **LOUIS VUITTON®** goods through its boutique located in the Condado section of San Juan, Puerto Rico. Defendant Morales has not been authorized by plaintiff to sell **LOUIS VUITTON®** branded goods. Hence, the sale by Morales of goods bearing the world famous **LOUIS VUITTON®** marks is without leave or authority from plaintiff and constitutes counterfeiting.

**CIVIL NO. 03-2277 (JAG)**                                        6

**<u>Plaintiff is entitled to Permanent Injunction, Statutory Damages and to the recovery of expenses and reasonable attorneys fees</u>**

Under Section 34 of the Lanham Act Plaintiff is entitled to a permanent injunction to stop repetition by Morales of his egregious conduct and to prevent the violation of its trademark rights.

However, a permanent injunction alone is insufficient *per se* to discourage Morales from returning to his antics as it does not compensate plaintiff for the damages sustained as a result of defendant's counterfeiting activities. The best disincentive against future recurrence is to compel Morales to pay plaintiff for the pecuniary damages he has caused. A permanent injunction against Morales coupled with an order directing him to shell out plaintiff's damages will force defendant to make his illegal activities unprofitable, thus providing adequate deterrence for the future. This is clearly in line with the purpose of trademark laws which "…is to prevent use of same or similar marks in a way that confuses the public about the actual source of goods or services." <u>Star Financial Services, Inc. v. AASTAR Mortg. Corp.</u>  89 F.3d 5, 9 (1st Cir. 1996) In this sense, the Court's "…primary task is to make violations of the Lanham Act unprofitable to the infringing party." <u>Veryfine Products v. Colón Brothers</u>, 799 F. Supp. 240, 259 (D.P.R.1992)

The Court shall now analyze and discuss the admissibility of certain evidence proffered by plaintiff which was duly admitted.

**Admittance of the Seizure Inventory List as Evidence**

The admission into evidence of the Seizure Inventory List displaying the assorted 742 Louis Vuitton Malletier branded items seized from Morales' business was questioned by defendant on hearsay grounds.

There are recognized exceptions to the general rule of inadmissibility of hearsay which are listed in Federal Evidence Rules 803 and 804.  "The common thread which runs through all of the hearsay exceptions is the assurance of trustworthiness. Another thread is the contemporaneity of the statement to the event about which it was made." <u>Ortíz Alfaro v. Sistema Universitario Ana G. Méndez</u>, 1999 WL 54417 * 1 (D.P.R.) (citing 5 Weinstein's <u>Federal Evidence</u>, Chapters 803 and 804 (1998)).

**CIVIL NO. 03-2277 (JAG)**                              7

Likewise, the residual exception found in Evidence Rule 807 was created to provide for specific cases that do not fall within one of the recognized exceptions. Admissibility of the evidence under this Rule depends on guarantees of trustworthiness comparable to those of the enumerated exceptions. See Colasanto v. Life Ins. Co. of North America, 100 F. 3d 203, 213 (1st Cir. 1996). In determining the trustworthiness of hearsay offered under the residual exception, courts consider such factors as: (1) the character of the statement; (2) whether it is written or oral; (3) the relationship of the parties; and (4) the probable motivation of the declarant; and (5) the circumstances under which it was made. Weinstein, supra, at § 807.03 [2] [b].

Plaintiff has met such factors based on the testimony provided by Mr. Marrero. The inventory seizure list was prepared on the same day that the U.S Marshals seized the Louis Vuitton branded goods from Morales' business. Therefore, the document was prepared simultaneously or soon enough after the events unfolded. The list is a written statement prepared during the seizure by one of Marrero's investigators present at such event. Mr. Marrero is the Court appointed custodian of the goods seized from Morales and has access to such document. Notably, the list was prepared during the course of the seizure made by the U.S. Marshals. Therefore, there is an enormous probative value on such piece of evidence.

Moreover, the seizure inventory list is a present sense record/regularly conducted activity under the exception contemplated by Fed. R. Evid. 803(6). The seizure inventory list was made simultaneously to the events that unfolded during the U.S. Marshal's seizure at Morales' business. Such list constitutes a regularly kept record to perpetuate the quantity of seized Louis Vuitton branded merchandise carried out, as part of Plaintiff's business to investigate counterfeit merchandising of goods branded with its valid, existing and enforceable federal trademark registrations.

As if it were not enough, there is still another hearsay exception that applies, that is under Fed R. Evid. 803(8). The seizure inventory list is a statement or data compilation that sets forth the matters observed by law enforcement personnel, namely the U.S. Marshals, pursuant to a duty imposed by the law, as to which matters there was a duty to report. Hence, the seizure inventory list encloses factual

**CIVIL NO. 03-2277 (JAG)**                                        8

findings resulting from a civil action investigation made pursuant to authority granted by law, that is, as approved by virtue of the Writ to seize and impound issued by the Court in this case on December 2, 2003.

Therefore, the seizure inventory list is certainly admissible under Rule 803 (8) (C). In this regard, Morales' argument that the investigator and/or U.S. Marshall preparing such list should testify as to the preparation of the list fails.

The U.S. Supreme Court in <u>Beech Aircraft Corporation v. Rainey</u>, 488 U.S. 153 (1988) adopted a much broader interpretation of the Rule in concluding that even opinions or conclusions derived from data contained in a report are admissible under this rule. Likewise, the Court of Appeals for the First Circuit has flatly rejected the argument that official firsthand knowledge is required. In <u>Robbins v. Whelan</u>, 653 F. 2d 47 (1st Cir. 1981) the Court held that a report prepared by the Department of Transportation, which in fact constituted a compilation of data provided by car manufacturers, was admissible under Rule 803(8)(C). In so holding, the Court of Appeals rejected defendant's argument that the report in question was prepared by officials who neither produced the figures appearing therein nor verified its accuracy. The Court reasoned that the agency need not have firsthand knowledge of all the matters contained in the report, so long as it has "first hand knowledge" of the investigation by which it accumulates the published factual findings. See <u>Remington Investment, Inc. v. Quintero & Martínez Co., Inc.</u>, 961 F. Supp. 344 (D.P.R. 1997). Such knowledge was provided by Marrero during his testimony.

Therefore, the seizure inventory list is a trustworthy admissible hearsay and rightfully admitted into evidence.

**Statutory Damages**

To aid in curtailing the increasing wave of counterfeit activity, Congress in 1996 increased penalties and facilitated procedures for the anti-counterfeiting battle. One of the elements of this legislative package was the provision for statutory damages. 15 U.S.C.A. § 1117(c) provides for the election of statutory damages in a counterfeiting case. <u>McCarthy on Trademarks and Unfair Competition</u>, Fourth Edition §30:95 (2005).

**CIVIL NO. 03-2277 (JAG)** 9

Therefore, in a case involving use of a counterfeit mark, Plaintiff, as a trademark owner may elect at any time before final judgment is rendered, to recover an award of statutory damages of up to $100,000 per trademark infringed, enhanced to up to $1,000,000 per mark if the infringement is willful. See Microsoft Corporation v. Samuel Sellers, __F. Supp. 2d __, 2006 WL 208581 (E.D. Tenn.).

The choice of electing statutory damages is appropriate, particularly in cases such as this one, because the information needed to establish an exact measure of actual damages is within the infringer's control, namely Morales, and has not been disclosed by Morales, although it was requested through proper discovery mechanisms. See Superior Form Builders v. Dan Chase Taxidermy Supply Co., 74 F. 2d 488 (4th Cir. 1996) (noting that a plaintiff may recover statutory damages whether or not there is adequate evidence of actual damages); Yurman Design, Inc. v. PAJ, Inc., 93 F. Supp. 2d 449, 462 (S.D.N.Y. 2000) ("statutory damages have been made available to plaintiffs in infringement actions precisely because of the difficulties inherent in proving actual damages and profits").

Courts have held that a successful plaintiff in a copyright and/or trademark infringement case is entitled to recover enhanced statutory damages. See Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F. 3d 502, 506 (7th Cir. 1994); Microsoft Corporation, supra.

In the case at bar, Morales disregarded Plaintiff's discovery requests, disobeyed the orders of the Court compelling him to respond to the same, and in general, has shown absolute disregard of his duties and obligations under the law, causing plaintiff to incur in costs, expenses and attorney's fees. [Dockets Nos. 117,121,126,129, 140,160, 161,173,174,177 and 181]

Given Morales' infringement of Plaintiff's trademark rights to obtain financial gain by confusing consumers as to the source, origin and sponsorship of Morales' goods, plaintiff has undoubtedly sustained an irreparable damage.

The Court must consider the assorted counterfeit Louis Vuitton branded goods seized from Morales, as listed in the seizure inventory marked, namely women's bags, women's wallets, belts, ladies shirts, a lighter holster, an organizer, key rings, women's shoes, men's wallets, card holsters, lipstick cases and holders, coin wallets, cosmetic cases, cellular cases, large cosmetic cases, epi cases,

**CIVIL NO. 03-2277 (JAG)**                              10

mini wallets, a belt, small wallets, hair clips, a tote bag, a portfolio, women's boots, large umbrellas, scarfs, polo shirts, hats, a key holder, card holders, luggage, earrings, and watches.

Plaintiff is entitled to an award of statutory damages in the amount of $50,000.00 in view of Morales' liability for trademark infringement, false designation of origin and unfair competition.

### Attorney's Fees and Costs

Section 1117 (a) of the Lanham Act authorizes court-award attorney fees "to the prevailing party" in exceptional cases. See 15 U.S.C. § 1117 (a). Although the awarding of attorney fees is in the court's discretion, the legislative history of section 1117 (a) provides some guidance as to what is meant by "exceptional cases". The legislature refers to acts of infringement that are "malicious, fraudulent, deliberate, and willful. See La Amiga del Pueblo, Inc. v. Ismael Robles, 748 F. Supp. 61 (D.P.R. 1990). Under the statute, the decision to award fees is committed to the district court. See 5 J.T. McCarthy, McCarthy on Trademarks and Unfair Competition § 30:99, at 30-184 (4th ed. 2001); see also Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd., 282 F. 3d 23, 31 (1st Cir. 2002). Attorneys' fees may also be awarded "when equitable considerations justify such awards." Id.

The widespread use of this standard for awards of attorney's fees "reflects the fact that only the district court has the intimate knowledge of the nuances of the underlying case." See Richardson v. Miller, 279 F. 3d 1 (1st Cir. 2002), (cited in Tamko, supra).

In view of Morales' tactics in the case, obstructing the discovery for approximately a year, ignoring the Court's orders [Docket No. 121] and the entry of Morales' default as to liability [Dockets Nos. 224 and 229], this Court has no other recourse but to also award attorney's fees and allow plaintiff to recover costs. See Reebok International Limited v. Sebelen, 959 F. Supp. 553 ( D.P.R. 1997).

The evidence from the Default Damages Hearing, notably the assorted 742 Louis Vuitton branded goods seized, as itemized in the seizure inventory list, Morales' marketing tactics to confuse, deceive and induce the public and consumers to purchase counterfeit LVM branded goods, and, the numerous Louis Vuitton branded goods located at the business, as stated by witness Grace Vázquez, serve as exceptionable grounds to substantiate the imposition of attorney's fees.

**CIVIL NO. 03-2277 (JAG)**                           11

Based on the foregoing an award of attorney's fees and costs in prosecuting this case is, thus, deemed appropriate.

### Conclusion

Morales obstructed plaintiff's efforts to protect its ownership and exclusive right to use its registered marks in commerce. More so, Morales was caught red handed with a high volume of assorted seized counterfeit inventory.

A court may, in exceptional cases of trademark infringement, award reasonable attorneys' fees to the prevailing party. Generally, courts define an "exceptional" case of infringement as one involving willful or deliberate conduct on defendant's part." <u>VMG Enterprises, Inc. v. F. Quesada & Franco, Inc.</u> 788 F.Supp. 648, 661 -662 (D.P.R.1992).

A case is exceptional if the acts of trademark infringement were malicious, fraudulent, deliberate, or willful. <u>Tamko Roofing Products v. Ideal Roofing</u>, 282 F.3d 23, 31 (1st Cir. 2002). Bad faith or fraud is not a necessary condition to an award of attorneys' fees under Section 35 of the Lanham Act.'[W]illful conduct may be sufficient when the trial court takes into account all the facts and equities of the case'." <u>Anywhere, Inc. v. Romero</u>, 344 F.Supp.2d 345, 346-347 (D.P.R. 2004) A retailer, such as Morales, is reputed to have intentionally used a counterfeit mark in commerce if he has "…failed to inquire further because he was afraid of what the inquiry would yield. Willful blindness is knowledge enough." <u>Louis Vuitton S.A. v. Lee</u>, 875 F.2d 584, 590 (7th Cir. 1989). Thus, a retailer that buys "…obviously poorly crafted goods from an itinerant peddler at bargain-basement prices is guilty of willful blindness". <u>Channel, Inc. v. Italian Active Wear of Florida, Inc.</u>, 931 F. 2d 1472, 1476 (11th Cir. 1991). Therefore, willful blindness is not a defense.

For sure, Morales "….must have known something about the retail trade. Vuitton [is an ] international status [symbol] known to everyone, whether or not proficient in the English language, who sells handbags and luggage and to most people that buy them." <u>Louis Vuitton S.A. v. Lee</u>, <u>supra</u>, at 589. Therefore, it is inconceivable that Morales would have never heard of Plaintiff or of the **LOUIS VUITTON®** marks.

**CIVIL NO. 03-2277 (JAG)**                            12

In any event, federal registration gives third parties constructive notice of ownership by the registrants. 15 USC §1072. Hence, there is no excuse for another person to adopt and start using a similar or identical mark in connection with like products or services. Consequently, notice under 15 USC §1072 prevents a junior user from claiming any defense based on good faith innocent use or lack of notice. <u>Davidoff Extension v. V. Davidoff Comercio e Industria,</u> 747 F. Supp. 122, 127 (D.P.R. 1990).

In conclusion, there can be no question that this is an exceptional case. It has been shown that Morales' illegal activities are willful and with knowledge of the fact that the goods they are selling are counterfeit. Willful blindness is knowledge enough. <u>Louis Vuitton S.A. v. Lee</u>, <u>supra</u>, at 590.

Moreover, Plaintiff sells only through authorized retail outlets, and Morales has not been or is authorized to sell **LOUIS VUITTON®** goods. Consequently, in addition to a permanent injunction, Plaintiff is entitled to recover statutory damages, costs of proceedings and reasonable attorney's fees in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 117.

## **RECOMMENDATIONS**

In light of the above, the undersigned Magistrate-Judge hereby makes the following **RECOMMENDATIONS**:

(1)   That Morales and each of his agents, servants, employees, attorneys, assignees, and all others in privity or acting in concert with him be **permanently enjoined** from committing or perpetrating any of the following acts:

(a)   Using any reproduction, simulation, counterfeit, copy or colorable imitation confusingly similar to Plaintiff's marks.

(b)   Using in any manner any service mark, corporate name, trademark, trade name, trade dress, words, numbers, abbreviations, designs, colors, arrangements, or any combinations thereof, which would imitate, resemble or suggest Plaintiff's marks;

(c)   Otherwise infringing Plaintiff's well-known marks;

**CIVIL NO. 03-2277 (JAG)**                          13

      (d)    Unfairly competing with Plaintiff, diluting the distinctiveness of Plaintiff's well-known marks.

      (e)    Advertising, promoting, marketing, publishing or sending any e-mail or other messages using any mark or name that is confusingly similar to Plaintiff's marks;

      (f)    Using, registering or reserving any name, mark, label, symbol or logo that is confusingly similar to Plaintiff's marks.

      (2)    That Morales deliver up for destruction all unauthorized products, including apparel, bags, watches, shoes, and all other materials in his possession or under his control that contain Plaintiff's marks, or any other name or mark that resembles the marks or any other reproduction, counterfeit, copy or colorable imitation of Plaintiff's marks and all plates, molds, matrices, and other means of making or duplicating the same.

      (3)    To the extent that Plaintiff has elected to recover statutory damages under 15 U.S.C. § 1117(c), instead of actual damages, the Magistrate recommends that Plaintiff be allowed to recover statutory damages from Morales in the amount of $50,000.00. The foregoing assessment takes in consideration the business activity in which Morales is engaged and the size and volume of counterfeit inventory that was seized from him, to wit 742 items. Morales' egregious conduct was also considered as opposed to other defendants that were found with considerably smaller inventories.

      (4)    That Plaintiff be allowed to recover costs and reasonable attorneys fees from Defendant Tito Morales d/b/a Paris Bags since the Court finds this is an exceptional case under 15 U.S.C §1117.

Under the provisions of 28 U.S.C. § 636 and Local Rule 72(d), District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

**CIVIL NO. 03-2277 (JAG)** 14

    **SO RECOMMENDED**.

In San Juan, Puerto Rico, this 14th day of March, 2006.

*S/ Gustavo A. Gelpi*
**GUSTAVO A. GELPI**
United States Magistrate-Judge