**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

LOUIS VUITTON MALLETIER

Plaintiff

v.

ENRIQUE FORTY D/B/A LINCOLN FANTASY; PELUET OF PUERTO RICO CORP., et. al.

Defendants

**CIVIL NO.** 03-2277 (JAG)

**REPORT AND RECOMMENDATION**

The matter pending before the Court provides an opportunity to once again examine and discuss the repeatedly serious violations incurred by individuals and a corporation engaged in the business of counterfeiting in trademarked goods. Plaintiff Louis Vuitton Malletier ("LVM") is particularly hard hit by counterfeiting activities which unlawfully take advantage of the prestige of its brands, tradition, identity and image. Plaintiff has requested that statutory damages be imposed upon the defendants listed below.

A statutory damages hearing was held on May 31, 2006 limited to the four remaining defendants. The table that follows shows the name of each defendant, as well as the amount of counterfeit items purchased and seized from each:

| No. | Defendant | Store Name | Items Purchased | Items Seized |
|---|---|---|---|---|
| 1 | Juan A. Nieves Colón | Joyería Jeny Jary | 1 | 357 |
| 2 | Carlos Morell | Accessories Plaza | 1 | 0 |
| 3 | Peluet of Puerto Rico, d/b/a Paradise Plus | Paradise Plus | 1 at Paradise Plus 2 at Peluet of Puerto Rico, Inc. | 170 |
| 4 | Edgar Torres Rosario | Andrea's Leather Shop | 1 | 14 |

At the hearing, the Court heard live testimony from plaintiff's lead investigator on Louis Vuitton counterfeited products, Mr. José Marrero, and from Mrs. Nathalie Chasques, Louis Vuitton Malletier's Anticounterfeiting Manager for the Americas. In addition, plaintiff offered and submitted abundant documentary evidence in support of the complaint, including:

a. Certificates of Registrations for the marks owned by LVM
b. Certificates of Registration of US trademarks owned by LVM
c. Certificate of Registration concerning the LV logo owned by LVM
d. Certificates of Registration for trademark CUIR EPI owned by LVM
e. USPTO Trademarks Electronic Search System for the mark LV owned by LVM.
f. Declaration of José F. Marrero and attached exhibits
g. Declaration of Roberto Morales and attached exhibits
h. Declaration of Sharymel Nieves and attached exhibits
i. Declaration of Grace Vázquez and attached exhibits
j. Declaration of Emmanuel Barbault and attached photos related to the examined LVM branded items.
k. Copies of the seizure inventory sheets concerning the listed defendants
l. Letters sent by the U.S Customs office concerning the seizure of Counterfeit merchandise sent to defendant Peluet of Puerto Rico, Inc.
m. Admissions made by defendant Juan A. Nieves Colón d/b/a Jeny Jary during his deposition taken on March 30, 2005.

After giving due consideration to the record as a whole and all evidence submitted at the hearing, the Court hereby makes the following:

**FINDINGS OF FACT**

1. Plaintiff Louis Vuitton Malletier ("LVM") is a corporation organized and existing under the laws of France.

2. Plaintiff is in the business of manufacturing, and selling in Puerto Rico, the United States and many parts of the world, luxury leather goods, bags, wallets, apparel, shoes, watches and related accessories under its renowned **LOUIS VUITTON**® marks. Its founding and leading brands are **LOUIS VUITTON®, LV**®, and the **LOUIS VUITTON®** or **LV® DESIGNS,** (the **LOUIS VUITTON®** marks).

3. The **LOUIS VUITTON**® marks have become well known and famous among the trade, and the public at large, in the United States, Puerto Rico and many parts of the world.

4. The **LOUIS VUITTON®** marks are distinctive. Sales under the **LOUIS VUITTON®** marks are in multimillion dollars. As a result thereof, the trade and the public in general widely recognize the **LOUIS VUITTON®** marks as the designation that identifies plaintiff and its products.

5. Since as early as 1931, plaintiff has owned a significant number of trademark registrations in the Principal Register of the U.S. Patent and Trademark Office for **LOUIS VUITTON®** for use in connection with a wide range of goods.

6. All registrations plaintiff owns are valid and subsisting and are prima facie evidence of the validity of the **LOUIS VUITTON**® marks, and of plaintiff's ownership and exclusive right to use its marks in commerce in accordance with 15 U.S.C. §1057(b). Moreover, a large number of these registrations have become incontestable in accordance with 15 U.S.C. §1065 and are conclusive evidence of the validity of the marks and of LVM's ownership and exclusive right to use them pursuant to 15 U.S.C. § 1115(b).

7. In addition, plaintiff also owns a substantial number of trademark registrations for the **LOUIS VUITTON®** marks issued by the Department of State of the Commonwealth of Puerto Rico, all of which are valid and subsisting and in full force and effect.

8. Plaintiff has spent substantial resources and gone to great lengths to ensure that its products are of the highest quality and workmanship. As a result thereof, the **LOUIS VUITTON®** marks have become emblematic for high quality luxury leather products and have come to identify plaintiff as the source from which such products originate.

9. Plaintiff sells **LOUIS VUITTON®** branded goods only through its' Louis Vuitton stores worldwide, which Plaintiff either owns or operates directly.

10. Defendants either continue to sell or have sold goods bearing counterfeit copies of **LOUIS VUITTON®** marks.

11. None of the defendants have been or are authorized by plaintiff to sell **LOUIS VUITTON®** branded products.

12. The table above establishes the number of counterfeit items seized or purchased from each defendant.

13. Sale by the defendants of products bearing counterfeit copies of LVM damages plaintiff's business, image, goodwill, profits and reputation and, unless stopped, will continue to cause irreparable damage to the plaintiff. By selling and distributing inferior products that fraudulently bear Plaintiff's trademarks, defendants undermine and significantly affect the demand for Plaintiff's products. In this regard, Louis Vuitton is not saying that everyone who knowingly purchases a counterfeit Louis Vuitton product would have otherwise bought a genuine Louis Vuitton product if the counterfeit

wasn't available. Although Louis Vuitton undoubtedly loses some sales in this manner, far greater economic harm comes from the negative impact that these counterfeits have on consumers who, for example, would buy genuine Louis Vuitton merchandise, but decide not to, because they feel that the status or prestige of owning a genuine Louis Vuitton product diminishes when counterfeits are readily available. As such, counterfeiting not only reduces Louis Vuitton's revenues, it also damages the Company's reputation and goodwill.

14. As part of plaintiff's broader brand protection policy, its struggle against counterfeiting is one of the plaintiff's priorities.

15. Anti-counterfeit measures are organized by the plaintiff, particularly involving authorities in different countries, including the United States of America, notably, through the U.S. Customs Service.

16. With the assistance of the U.S. Customs Service, plaintiff has successfully prevented the importation of many counterfeit goods to the United States of America and has been able to determine the country from where such counterfeit goods originate.

17. Counterfeit activities of the **LOUIS VUITTON®** trademark are highly profitable to trademark infringers. By trafficking in counterfeit goods, wrongdoers not only stand to unjustly enrich themselves, they also become an integral part of an ongoing criminal, inhumane and repulsive process that fosters child labor. Such egregious conduct is not acceptable and is tantamount to the endorsement and approval of slavery.

18. Plaintiff has elected to recover statutory damages under 15 U.S.C. § 1117(c), instead of actual damages.

## FINDINGS OF FACT FOR EACH DEFENDANT

### Juan A. Nieves Colón d/b/a Joyería Jeny Jary

19. Defendant Juan A. Nieves Colón operates a retail storefront location at Alberio Street, Caguas, Puerto Rico designated as Joyería Jeny Jary.

20. Originally, Plaintiff's investigator purchased at this store an item, which resulted to be

counterfeit.

21. As a result of the civil seizure authorized early on in this case, Defendant's location was inspected and a total of 357 counterfeit items were seized.

22. Defendant Nieves admitted during his deposition that he was supplied with 500 fake LVM branded watches and that 175 of these watches were seized. Hence, Defendant sold 325 counterfeit watches at this location.

**Carlos Morell d/b/a Accessory Plaza**

Defendant Carlos Morell operates a retail establishment identified as Accesory Plaza located at Paseo Gautier Benitez, Caguas, Puerto Rico.

Originally Plaintiff's investigator purchased one counterfeit LVM item at this store.

No counterfeit items were seized from this store because at the time the U.S. Marshals attempted to execute the seizure order defendant's location was closed.

**Peluet of Puerto Rico Inc./ Paradise Plus**

Defendant Peluet of Puerto Rico, Inc. ("Peluet") operates a wholesale distribution warehouse at B Street, Lot 36, Section 1, Sábana Abajo, Industrial Park, Carolina, Puerto Rico.

Defendant Peluet also does business as Paradise Plus and operates four (4) different retail establishments under this name, located within other malls or larger stores such as the Pueblo supermarket in Altamira, Guaynabo, PR.

Plaintiff's investigators purchased two (2) counterfeit items at defendant's wholesale warehouse, and saw there a wide assortment of LVM branded counterfeit goods.

In addition Plaintiff's investigators purchased at Defendant's Paradise Plus kiosk located in the Pueblo supermarket at Altamira, Guaynabo, Puerto Rico one (1) counterfeit LVM wallet.

As a result of the civil seizure authorized early on in these proceedings a total of 170 counterfeit goods were seized from this Defendant.

Defendant Peluet has a long history of counterfeiting activities involving the **LOUIS VUITTON**® marks. For instance, On July 26, 2002 U.S. Customs noticed Peluet that it had seized at port of entry, San Juan, 200 cartons with different quantities of LVM fake handbags that totaled 3,000 individual pieces.

That is not all. On December 2, 2003 Peluet of Puerto Rico, Inc. was temporarily restrained in this case from counterfeiting plaintiff's trademarks and ordered to show cause why a preliminary injunction should not be issued.

On December 11, 2003 Defendant Peluet appeared before the Court and agreed to an Order extending the terms of the Temporary Restraining Order for an additional 10 days to expire by January 5, 2004. The purpose of the extension was to allow the parties to work out an agreement. The Court allowed the extension and set a preliminary injunction hearing for December 30, 2003 in case an agreement was not reached.

On December 23, 2003 Peluet and the plaintiff entered into a stipulation and informed the Court that Peluet agreed to be subject to the preliminary injunction and that, therefore, the preliminary injunction hearing set for December 30, 2003 was not necessary.

The provisions of the preliminary injunction to which Peluet is subject appear in the Court's Order of December 16, 2003 [Docket No. 17]. From the four corners of that Order it is clear that Peluet, its officers, directors, stockholders and any others, in privity or acting in concert with it, are all enjoined, from importing, marketing, selling and otherwise trading in goods bearing counterfeit copies of plaintiff's trademarks.

Despite the clarity of the prohibitions the preliminary injunction imposes upon Peluet, in May 2004, Defendant attempted twice to introduce through the Port of San Juan, fake goods with counterfeit copies of Plaintiff's marks.

Peluet's first attempt took place on May 4, 2004. The shipment consisted of eleven (11) counterfeit handbags, which the U.S. Custom Service seized and impounded at entry.

The second attempt happened on May 26, 2004. Again, the U.S. Customs Service impounded and seized one hundred and twenty (120) counterfeit wallets.

Shipping documents clearly show that said fake goods were consigned to Defendant's address at PR CROP, Calle B Lote 36 Sec. 1, Carolina, and Puerto Rico.

Hence Defendant was caught red-handed by the U.S Custom Service, attempting to introduce counterfeit LVM goods into U.S. territory while Defendant was subject to the terms of the

preliminary injunction ordered in this case.

It is clear from the foregoing that Defendant has shown a gross disregard to the authority of the Court and of the Federal Judiciary.

**Edgar Torres Rosario d/b/a Andrea' Leather Shop**

Defendant Edgar Torres Rosario does business as Andrea's Leather Shop and operates a kiosk at Plaza del Caribe Mall in Ponce, Puerto Rico. Defendant's kiosk is located in one of the mall's major walkways.

Plaintiff's investigators purchased a LVM branded belt, which tuned to be a fake.

As a result of the civil seizure the Court authorized in this case a total of 14 counterfeit items were seized from Defendant.

The Court takes notice that Defendant is also a defendant in another trademark counterfeit case, specifically case number 04-2367(SEC) filed by Lacoste Alligator S.A. vs. Sugar Shack *et als.*

In short, the Court finds that there is more than enough evidence to warrant the imposition of Statutory Damages.

**CONCLUSIONS OF LAW**

In the instant case, the allegations in the complaint are well pleaded, duly supported and plainly establish plaintiff's causes of action. All factual statements are supported by abundant proof of plaintiff's Trademark Registrations in the U.S. and Puerto Rico, and by the live testimonies presented at the hearing.

The facts plainly establish that the defendants listed in the table above engaged in the willful distribution and sale of goods labeled with counterfeit **LOUIS VUITTON**® marks.

Section 45 of the Lanham Act (15 USCA § 1127) defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."

"Counterfeiting is the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark… Often, counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise. Thus, counterfeiting is 'hard core' or 'first degree' trademark infringement and is the most blatant and egregious form of

passing off… and is prevalent with respect to high-quality, 'status' goods." J. Thomas McCarthy, *McCarthy On Trademarks and Unfair Competition*, Vol. 4, §25:10, Page 25-17.

Plaintiff only sells **LOUIS VUITTON®** goods through its' Louis Vuitton stores worldwide, which Plaintiff either owns or operates directly. No single defendant has been authorized by plaintiff to sell **LOUIS VUITTON®** branded goods. Hence, the sale by Defendants of goods bearing the world famous **LOUIS VUITTON®** marks is without leave or authority from plaintiff and constitutes counterfeiting.

**PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTION, STATUTORY DAMAGES AND TO THE RECOVERY OF EXPENSES AND REASONABLE ATTORNEYS FEES**

Under Section 34 of the Lanham Act plaintiff is entitled to a permanent injunction to stop repetition by defendants of their egregious conduct and to prevent the violation of its trademark rights (15 U.S.C.A. §1116(a)).

However, a permanent injunction alone is insufficient per se to discourage defendants from returning to their antics and does not compensate plaintiff for the damages sustained as a result of defendants' counterfeiting activities. The best disincentive against future recurrence is to compel defendants to pay to plaintiff for the pecuniary damages they have caused. A permanent injunction against defendants coupled with an order directing them to shell out plaintiff's damages will force defendants to put their hands in their pockets, make their activities unprofitable, and provide adequate deterrence for the future.

This is clearly in line with the purpose of trademark laws which "…is to prevent use of same or similar marks in a way that confuses the public about the actual source of goods or services." Star Financial Services, Inc. v. AASTAR Mortg. Corp. 89 F.3d 5, 9 (1st Cir. 1996) In this sense, the Court's "…primary task is to make violations of the Lanham Act unprofitable to the infringing party." Veryfine Products v. Colón Brothers, 799 F. Supp. 240, 259 (D.P.R.1992)

**Statutory Damages**

To aid in curtailing the increasing wave of counterfeit activity, the U.S. Congress in 1996 increased penalties and facilitated procedures for the anti-counterfeiting battle. One of the elements

of this legislative package was the provision for statutory damages. 15 U.S.C.A. § 1117(c), provides for the election of statutory damages in a counterfeiting case. McCarthy on Trademarks and Unfair Competition, Fourth Edition §30:95 (2005).

Therefore, in a case involving use of a counterfeit mark, Plaintiff, as a trademark owner may elect at any time before final judgment is rendered, to recover an award of statutory damages of up to $100,000 per trademark infringed, enhanced to up to $1,000,000 per mark if the infringement is willful. See Microsoft Corporation v. Samuel Sellers, 2006 U.S. Dist. LEXIS 4355.

The choice of electing statutory damages is appropriate, particularly in cases such as this one, because the information needed to establish an exact measure of actual damages is within the infringer's control, namely defendants, and has not been thoroughly disclosed by defendants, although it was requested thru proper discovery mechanisms. See Superior Form Builders v. Dan Chase Taxidermy Supply Co., 74 F. 2d 488 (4th Cir. 1996) (noting that a plaintiff may recover statutory damages whether or not there is adequate evidence of actual damages); Yurman Design, Inc. v. PAJ, Inc., 93 F. Supp. 2d 449, 462 (S.D.N.Y. 2000) ("statutory damages have been made available to plaintiffs in infringement actions precisely because of the difficulties inherent in proving actual damages and profits").

Courts have held that a successful plaintiff in a copyright and/or trademark infringement case is entitled to recover enhanced statutory damages. See Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F. 3d 502, 506 (7th Cir. 1994); Microsoft Corporation, supra.

**Attorney's Fees and Costs**

Section 1117 (a) of the Lanham Act authorizes court-award attorney fees "to the prevailing party" in exceptional cases. See 15 U.S.C. § 1117 (a). Although the awarding of attorney fees is in the court's discretion, the legislative history of section 1117 (a) provides some guidance as to what is meant by "exceptional cases". The legislature refers to acts of infringement that are "malicious, fraudulent, deliberate, and willful. See La Amiga del Pueblo, Inc. v. Ismael Robles, 748 F. Supp. 61 (D.P.R. 1990). Under the statute, the decision to award fees is committed to the district court. See 5 J.T. McCarthy, McCarthy on Trademarks and Unfair Competition § 30:99, at 30-184 (4th ed.

2001); see also Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd., 282 F. 3d 23, 31 (1st Cir. 2002); Perfumanía, Inc. v. Perfulandia, Inc., 2004 U.S. Dist. LEXIS 15090 (D.P.R. 2004). Attorneys' fees may also be awarded "when equitable considerations justify such awards." Id. (citations omitted).

The widespread use of this standard for awards of attorney's fees "reflects the fact that only the district court has the intimate knowledge of the nuances of the underlying case." See Richardson v. Miller, 279 F. 3d 1 (1st Cir. 2002), as cited by Tamko, supra.

In view of defendants' tactics in the case, namely failing to appear at the hearing as well as requiring plaintiff to file additional pleadings and compelling orders for discovery, which forced plaintiff to incur in further costs, this Court has no other recourse but to also award attorney's fees and allow plaintiff to recover costs. See also Reebok International Limited v. Roberto Sebelen, 959 F. Supp. 553 ( D.P.R. 1997) (awarding attorney's fees and damages to plaintiff in accordance with defendants' respective transgressions).

The facts presented at the damages hearing, notably the assorted Louis Vuitton branded goods seized, as itemized in the seizure inventory lists, defendants' marketing tactics to confuse, deceive and induce the public and consumers to purchase fake Louis Vuitton branded goods and the various Louis Vuitton branded goods located at their businesses, serve as exceptionable grounds that substantiate the imposition of attorney's fees.

Based on the foregoing an award of attorney's fees and costs in prosecuting this case is deemed appropriate.

Retailers, like the defendants are reputed to have intentionally used a counterfeit mark in commerce if they have "…failed to inquire further because he was afraid of what the inquiry would yield. Willful blindness is knowledge enough." Louis Vuitton S.A. v. Lee, 875 F.2d 584, (7th Cir. 1989), at 590. Thus, a retailer that buys "obviously poorly crafted goods from an itinerant peddler at bargain-basement prices is guilty of willful blindness. Channel, Inc. v. Italian Active Wear of Florida, Inc., 931 F. 2d 1472, 1476 (11th Cir. 1991). Therefore, willful blindness is not a defense.

For sure, defendants must have known something about the retail trade. Louis Vuitton is an international status symbol known to everyone, whether or not proficient in the English language, who sells articles of clothing and to most people that buy them. See also Louis Vuitton S.A. v. Lee, supra, at 589. Therefore, it is inconceivable that defendants would have never heard of plaintiff of LVM or of the **Louis Vuitton®** marks.

In any event, federal registration gives third parties constructive notice of ownership by the registrants. 15 USC §1072. Hence, there is no excuse for another person to adopt and start using a similar or identical mark in connection with like products or services. Consequently, notice under 15 USC §1072 prevents a junior user from claiming any defense based on good faith innocent use or lack of notice. Davidoff Extension v. V. Davidoff Comercio e Industria, 747 F. Supp. 122, 127 (D.C.P.R. 1990).

In conclusion, there can be no question that this is an exceptional case. It has been shown that defendants' illegal activities are willful and with knowledge of the fact that the goods they are selling are counterfeit. Willful blindness is knowledge enough. Louis Vuitton S.A. v. Lee, supra, at 590.

Moreover, plaintiff sells only through authorized retail outlets, and defendants have not been or are authorized to sell **LVM®** goods. Consequently, in addition to a permanent injunction, plaintiff is entitled to recover Statutory Damages, costs of proceedings and reasonable attorney's fees in accordance with Section 35 of the Lanham Act ( 17 U.S.C.A. 1117).

## RECOMMENDATIONS

This Magistrate-Judge accordingly makes the following **recommendations**:

(1) That all defendants named in the table above and each of their agents, servants, employees, attorneys, assignees, and all others in privity or acting in concert with them be **permanently enjoined** from committing or perpetrating any of the following acts:

(a) Using any reproduction, simulation, counterfeit, copy or colorable imitation confusingly similar to Plaintiff's marks.

(b) Using in any manner any service mark, corporate name, trademark, trade

name, trade dress, words, numbers, abbreviations, designs, colors, arrangements, or any combinations thereof, which would imitate, resemble or suggest Plaintiff's marks;

(c) Otherwise infringing plaintiff's well-known marks;

(d) Unfairly competing with plaintiff, diluting the distinctiveness of Louis Vuitton's well-known marks.

(e) Advertising, promoting, marketing, publishing or sending any e-mail or other messages using any mark or name that is confusingly similar to plaintiff's marks;

(f) Using, registering or reserving any name, mark, label, symbol or logo that is confusingly similar to plaintiff's marks.

(2) That Defendants deliver up for destruction all unauthorized products, including apparel, bags, watches, shoes, and all other materials in their possession or under their control that contain plaintiff's marks, or any other name or mark that resembles the marks or any other reproduction, counterfeit, copy or colorable imitation of Plaintiff's marks and all plates, molds, matrices, and other means of making or duplicating the same.

(3) To the extent that plaintiff has elected to recover statutory damages under 15 U.S.C. § 1117(c), instead of actual damages, this Magistrate-Judge recommends that Plaintiff be allowed to recover statutory damages from each individual defendants as listed in the table that follows:

| No. | Defendant | Store Name | Items Purchased | Items Seized | Amount Recommended |
|---|---|---|---|---|---|
| 1 | Juan A. Nieves Colón | Joyería Jeny Jary | 1 | 357 | $ 50,000.00 |
| 2 | Carlos Morell | Accessories Plaza | 1 | 0 | $ 1,000.00 |
| 3 | Peluet of Puerto Rico, Inc. d/b/a Paradise Plus | Paradise Plus | 1 at Paradise Plus<br>2 at Peluet of Puerto Rico Inc. | 170 | $100,000.00 |
| 4 | Edgar Torres Rosario | Andrea's Leather Shop | 1 | 14 | $ 10,000.00 |

In general, statutory damages were assessed along the following scale of values The Court has applied in earlier decisions:

25 items or less- $1,000.00

Between 26 and 50 items- $2,500.00

Between 51 and 100 items-$5,000.00

More than a 101 items conditioned to the egregious conduct, type of business operation, repeat offenses, and high volume of seized fake inventory.

For purposes of the statutory damage assessment in the table above, the Magistrate gave special weight to the particular circumstances surrounding the activities of each defendant. In the case of Defendant Juan A. Nieves Colón, the Magistrate took in consideration the fact that Defendant admits that before the seizure Defendant sold over 325 counterfeit LVM watches, out of 500 he had purchased. This puts in perspective the extent of Defendant's activity. Thus the seizure of 357 items at defendant's location addresses only part of the story but does not explain the full dimension of defendant's egregious conduct. In view of the foregoing the undersigned recommends that defendant Juan A. Nieves Colón be ordered to compensate Plaintiff in the amount of $50,000.00.

As to defendant Carlos Morell the undersigned finds that an award of $1,000.00 is in line with the Court's guidelines for statutory damage assessment.

As to defendant Peluet of Puerto Rico, Inc. the findings of fact support the conclusion that this is a recalcitrant offender and that a larger award is clearly warranted. Hence, the imposition of statutory damages of $100,000.00 against this defendant is more than appropriate.

As to defendant Edgar Torres Rosario, the undersigned Magistrate-Judge took into consideration the nature of Defendant's business and the fact that Defendant operates in Plaza de Caribe Mall, which is one of the largest and best known shopping malls in the southern part of Puerto Rico. Therefore, a sum of $10,000.00 imposed against defendant Rosario is adequate.

The Court further recommends that plaintiff be allowed to recover costs and reasonable attorneys from each defendant above under 15 U.S.C §1117.

Finally, the undersigned again recommends that this matter be referred to the U.S. Attorney for any potential violation under 18 USC §2320 particularly as to those defendants that have engaged in a more egregious conduct by trading in larger amounts of counterfeit goods over a repeated period of time.

With this Report and Recommendation, the Court has disposed of plaintiff's claims against all remaining defendants.

Under the provisions of 28 U.S.C. § 636 and Local Rule 72(d), District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico, this 5th day of July, 2006.

S/ Gustavo A. Gelpi
GUSTAVO A. GELPI
United States Magistrate Judge